## HILTON v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

1. DEDICATION (§§ 35, 37*) — ACCEPTANCE — OFFICIAL ACTS — IMPROVEMENT OF STREET—USER BY PUBLIC.

A street was designated on official maps filed of the district, as a proposed street. A sewer was constructed in part of it and curb and sewer catch-basins at its intersection with other streets. The board of aldermen changed its grade, and the board of estimate and apportionment passed a resolution disapproving a resolution recommending the closing of the street, and it has been used since it was laid out by the public as a street. Held, that the street was dedicated for public purposes, and has been recognized as such by the public authorities, so that the city could not maintain obstructions therein.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 71, 73–75; Dec. Dig. §§ 35, 37.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§ 671*) — OBSTRUCTION OF STREET — ACTIONS —
LACHES.
   The fact that an abutting owner, suing to restrain obstruction of a
street and to compel removal of existing obstructions, delayed about 10
years after the first obstruction was placed therein, does not show him
guilty of laches precluding any remedy.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
1448; Dec. Dig. § 671.*]
   Burr, J., dissenting.

Appeal from Special Term, Kings County.
Suit by George L. Hilton against the City of New York and another
to restrain defendants from obstructing a public highway. Decree
for plaintiff, and defendants appeal. Affirmed.

The following is the opinion of Thomas, J., at Special Term:

The action is to restrain the defendants from obstructing an alleged public
highway, called "Dinsmore place," and to compel the removal of existing ob-
structions therein. Prior to the year 1862 the city of Brooklyn acquired title
to certain lots in the town of New Lots, county of Kings, known and designated
upon a map filed in the register's office of such county on March 10, 1835, and
entitled "Map of 995 Lots of the Rapelje Property on the Brooklyn and Ja-
maica Railroad Turnpike, by Martin G. Johnson." The lots so acquired were
bounded on the south or southerly by a strip marked "Railroad"; on the west
by Logan street, now Locust street; upon the north by lots now owned by the
plaintiff and by other persons; and on the east by Chestnut street. Rapelje
street, now Richmond street, was laid out on such map from the railroad strip
through the land acquired by the city, between Chestnut and Locust streets,
and was the westerly boundary of the lots now owned by the plaintiff, which
extend from Rapelje to Chestnut streets. The map also shows Fourth street
laid out through the lots acquired by the city and extending from Chestnut
street westerly to Rapelje street. The plaintiff's lots are the fifth tier of lots
north of Fourth street. The map also shows Third street running through the
lots of the city easterly from Locust street to Rapelje street; the northerly
line thereof being in a westerly extension of the southerly line of Fourth
street. On March 13, 1858, there was filed in the clerk's office of such county a
map entitled "Brooklyn Water Works location of Engine House and Force
Tubes Made from Survey December, 1857." This map was filed under the al-
leged authority of an act of the Legislature passed February 11, 1857, entitled
"An act to provide a supply of water to the city of Brooklyn," being chapter
22, and is signed James P. Kirkwood, Engineer, John H. Prentice, President.
This map shows the appropriation for construction purposes of Third and
Fourth streets, and of two tiers of lots northerly thereof between Chestnut
and Locust streets, and north of the land so appropriated the map shows a
strip of land 50 feet wide extending between such two streets marked "Pro-
posed street." The northerly line of the proposed street is the southerly line
of the plaintiff's lots. This "proposed street" is "Dinsmore place," which this
action concerns. On November 13, 1874, there was filed in the office of the
register of the county of Kings a map entitled "Town Survey Commissioners'
Map," now a part of the map of the city of New York, which shows a strip
identical with the "proposed street"; but such strip bears no name. The fol-
lowing acts relate to "Dinsmore place":
   (1) A sewer has been constructed through it from Richmond to Chestnut
street.
   (2) A sewer catch-basin has been located at the intersection of the curb lines
of Richmond street and Dinsmore place.
   (3) At the intersections of Dinsmore place with Logan street and Chestnut
street the curbs of such streets have been turned to form a connection with the
curbs on Dinsmore place when opened.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(4) The board of aldermen changed the grades and established new grades for all the streets in the neighborhood, including the street in question. The ordinance is: "7 * * * 'Street.' Beginning at the intersection of 'street' and Logan street, the elevation to be 45.0 feet." Then the grade is fixed at several points along the strip in question.

(5) In 1907 the board of estimate and apportionment passed this resolution: "Resolved, that the board of estimate and apportionment of the city of New York hereby disapproves of the resolution adopted by the local board of the Bushwick district, borough of Brooklyn, on the 1st day of August, 1906, recommending the closing of Dinsmore place, between Logan and Chestnut streets, in the borough of Brooklyn." This action followed the report of the chief engineer to the board of estimate, which is so important that it should appear:

"Closing of Dinsmore Place and Laying Out New Street, Brooklyn. Board of Estimate and Apportionment, Office of the Chief Engineer,

"January 18, 1907.

"Hon. George B. McClellan, Mayor, Chairman of the Board of Estimate and Apportionment—Sir: On December 14, 1906, the board of estimate and apportionment gave a public hearing on the proposed closing and discontinuing of. Dinsmore place, between Logan and Chestnut streets, and the laying out of a new street between Logan and Chestnut streets, in the borough of Brooklyn. Upon the request of property owners who appeared, the consideration of the matter was postponed. Meanwhile, Mr. Edward F. Linton, attorney for a number of the owners, has submitted to the board a brief stating that the owners of the property which would be taken for the laying out of the new street, instead of Dinsmore place, would be seriously damaged, as the property which they now hold lying immediately north of the present Dinsmore place would be unavailable for development, and urging that if the board were to take any additional land, it take 100 feet north of the present Dinsmore place, which would include all of the property of the protestants, and avoid damage to the portion which might be left.

"The proceeding originated in a request of the deputy commissioner of water supply for the borough of Brooklyn for the closing of the street in order that the land now occupied by it might be used as a part of the grounds of the Ridgewood Pumping Station. In reporting upon the resolution of the local board which was adopted as a result of this request, it was pointed out that, while the city already owned the existing Dinsmore place, it was laid out on the map as a public street, and the abutting property, undoubtedly had right of access to it as it had been used as a public highway for many years. It was also noted that the present street formed the southerly terminus of Richmond street and Force Tube avenue, both of which streets would be deprived of outlet, and it was suggested that if the present Dinsmore place were closed, a substitute street be laid out immediately to the north. Since receiving the brief of Mr. Linton, your engineer has communicated with the commissioner of water supply, gas and electricity, calling his attention to the points raised by the protestants and asking him whether or not he had any use for the additional land which they proposed that the city should take, that is, whether or not the department would need a strip 100 feet in width instead of the 50-foot strip included in the present Dinsmore place. Under date of January 14th I have received from Deputy Commissioner Goodwin, of the department of water supply, gas and electricity, a copy of a report by the acting chief engineer for the borough of Brooklyn, in which he states that when the department requested the closing and discontinuing of Dinsmore place it was expected that the pumping station would be extended to the north, and it was believed that, inasmuch as the land within the present Dinsmore place had been taken from land originally purchased for waterworks improvements, there could be no objection raised to the closing of the street. He further states that if such action would result in claims for damages to property either on this street or on other streets which might be deprived of an outlet he does not believe that it would be advisable to close the street, and suggests that the proceedings to do so be discontinued if such action will involve the laying out

of a new street at the expense of the city. This recommendation is approved by the deputy commissioner, and in view of these facts it would seem unnecessary for the board to take any action upon the plan submitted by the local board, unless it be to disapprove the plan in order that the owners of the property north of Dinsmore place may feel secure in proceeding with the development of their property.

"It is therefore recommended that the plan for which the hearing was given on December 14th, last, be disapproved.

"Respectfully,                    Nelson P. Lewis, Chief Engineer."

(6) About the year 1899 the water department constructed an iron fence on the north side of the engine house grounds so as to inclose 10 feet on the southerly side of Dinsmore place.

(7) Since this action was begun, a portion of this fence was taken down, and a brick building one story high erected, the northerly wall of which is on the line of the fence. This was done pursuant to plans prepared some considerable time before this action was begun.

(8) The water department has for some years back used at its convenience some portion of Dinsmore place for storing water pipes and unused building stone, and dirt and rubbish has been thrown on the street so as to raise the grade.

(9) Dinsmore place since it has existed, as above stated, has been used by the public for passage, and by the city for the waterworks.

In view of such history, I conclude that the strip of land known as "Dinsmore place" was dedicated for street purposes and has been recognized as such by the public authorities. The evident design was to extinguish Third and Fourth streets and substitute Dinsmore place. Without such substitution a gross injustice has been done the plaintiff and others similarly related to such streets, as they would have no near outlet east and west to the south as the railroad strip was not of right available to them so far as it appears.

It is said that the plaintiff has been guilty of laches. I think that he has not so delayed as to preclude any remedy.

The decree will provide against further obstruction of the street, the removal of refuse suffered to accumulate there, the removal of the fence and wall; but as to the whole street, or as to the 10 feet appropriated from the street, the decree will permit the city to build thereon upon payment of damages to the plaintiff. And if the city elects to pay such damages a reference may be ordered to ascertain what sum shall be paid the plaintiff in lieu of its easement in the street. If the city elects to condemn the plaintiff's interest in the street, the execution of the decree will be stayed 60 days to allow proceedings therefor. The plaintiff will have costs.

Argued before HIRSCHBERG, P. J., and JENKS, RICH, CARR, and BURR, JJ.

Francis K. Pendleton, for appellants.
Charles S. Taber, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Thomas at Special Term.

BURR, J., dissents on the ground that the evidence does not establish dedication on the part of the city.